189 P.3d 233 (2008)
Richard BROWN and Elva Brown, Appellants,
v.
HOUSEHOLD REALTY CORPORATION, Household Finance Corporation, III, Household Life Insurance Company and Does 1 through 20, inclusive, Respondents.
No. 60469-4-I.
Court of Appeals of Washington, Division 1.
July 28, 2008.
*234 Melissa Ann Huelsman, Law Offices of Melissa A. Huelsman, Seattle, WA, for Appellants.
David A. Weibel, Annette Elena Cook Bishop White & Marshall PS, Seattle, WA, for Respondents.
LEACH, J.
¶ 1 This case presents the question of whether a borrower/grantor waives any claims against a lender/beneficiary arising out of an obligation secured by a deed of trust by failing to request a preliminary injunction or restraining order enjoining a nonjudicial foreclosure sale at least five days before the sale date. We hold that a borrower waives these claims by failing to timely request this relief before the foreclosure sale.
¶ 2 Richard Brown and his mother, Elva Brown, took out a series of home loans with Household Finance Corporation (Household), secured by corresponding deeds of trust on their home. Two years after Household foreclosed the most recent deed of trust, the Browns sued Household for fraud, breach of the covenant of good faith and fair dealing, violation of the Washington Consumer Protection Act, violation of the federal Truth in Lending Act, and breach of fiduciary duty and quasi-fiduciary duty. The trial court granted summary judgment in favor of Household on all claims. Because the Browns made no attempt to use the presale remedies provided in the Deed of Trust Act, we affirm.

Background
¶ 3 The Browns allege that Household failed to disclose the terms and conditions of their loan contracts, induced them to enter loan contracts with excessive fees and excessive interest rates, required them to purchase unwanted credit insurance for the loans, and misled them into believing that they were purchasing unemployment and disability insurance coverage for their first position loan rather than for their second position loan.
¶ 4 The Browns purchased their home in 1999 with a loan from Chase. They later obtained a second position line of credit secured by the home. On November 15, 2000, the Browns applied to refinance with Household. On November 24, 2000, the Browns signed two loan agreements: a new first position loan and a new second position line of credit, both secured by the home. The first position loan included $14,108.53 in points, which reduced the Browns' interest *235 rate from 14.86 percent per year to 10.757 percent. The proceeds paid off the Browns' existing secured loans and $26,900 in unsecured debt. From the proceeds, they also paid $2,841.50 for a 60-month term of optional credit life insurance and received an $8,460.46 cash disbursement. The same day, the Browns took out a secured line of credit of $10,000 with an interest rate of 23.9 percent. This debt consolidation reduced the Browns' total monthly payments for home loans and consumer credit accounts.
¶ 5 On October 3, 2001, the Browns again applied to refinance their loans with Household. Richard told Household that he needed to finance $240,000 to $250,000 to complete the renovation of the residence. The appraised value of the residence was only $237,000. On October 19, 2001, the Browns obtained a new first position home loan in the amount of $237,025.64 and a secured line of credit for $15,000. The amount of the first position loan included $17,184.36 in points paid to buy down the interest rate from 13.86 percent to 10.95 percent. The proceeds were used to pay off the previous loans obtained from Household in 2000, as well as $12,831 in unsecured debt incurred by the Browns since their last refinance 10 months earlier. From these loan proceeds, they also paid $2,843.00 for 60-month term optional credit life insurance for this loan, for which they signed a disclosure notice describing the terms and limitations of the insurance contract.
¶ 6 The same day, the Browns obtained from Household a second position line of credit to consolidate additional unsecured debt. The interest rate was 19.98 percent, and the Browns paid an origination fee of $576, which was included in the loan. From the proceeds of this loan, they received a disbursement of $1,393.00. They purchased optional credit life, disability, and unemployment insurance for the line of credit and signed a disclosure notice describing the terms and limitations of this coverage. The premiums were based on the monthly account balance and billed as part of the minimum monthly payment. After Richard lost his job in late 2001, Household made several payments under the unemployment coverage.
¶ 7 The Browns made no payments on their first position loan from December 2001 through February 2002. In March 2002, Richard submitted a hardship application to have their payments reduced. Household approved the application, reducing the interest rate from 10.95 percent to 5 percent, which reduced the payments by half. The account was restructured and the past due amounts placed as a balloon payment at the end of the loan so the Browns would not incur late fees or penalties for the previously missed payments. After making some payments under the hardship program, Richard requested another restructure, which was approved in September 2002. Because the Browns made no payments after the second restructure, their hardship status was revoked and their account was referred for foreclosure in January 2003.
¶ 8 A notice of trustee's sale was recorded on March 13, 2003, setting a sale date of July 13, 2003. The Browns do not dispute that they received notice of the trustee's sale and had knowledge of the pending sale. They did not attempt to restrain the sale. Household, with its credit bid, was the highest bidder at the trustee's sale and received a trustee's deed, which was recorded on August 12, 2003. Two years after the trustee's sale, on August 10, 2005, the Browns brought this action against Household.

Discussion
¶ 9 Household argues that the Browns waived their claims under the Washington Deed of Trust Act ("Act") by failing to restrain the nonjudicial foreclosure sale. The Browns respond that waiver does not apply because they did not have actual or constructive notice of their claims before the sale. They further contend that claims for money damages are not waived under the Act and that to apply waiver in these circumstances contravenes public policy.
¶ 10 The Deed of Trust Act provides a procedure by which any enumerated entity may restrain a trustee's sale on "any proper ground."[1] This statutory procedure *236 is "the only means by which a grantor may preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure."[2] The statutory notice of trustee's sale advises each recipient that
[a]nyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.[[3]]
A party waives the right to postsale remedies where the party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale.[4]
¶ 11 In Plein v. Lackey,[5] Plein and others brought suit seeking a permanent injunction barring the trustee's sale and a declaration that the deed of trust was void because the underlying debt had been paid and the borrower was thus not in default.[6] Although Plein's complaint asked for a permanent injunction, he did not seek a preliminary injunction or any other restraining order to bar the sale as required by the Act.[7] While Plein's lawsuit was pending, the trustee's sale occurred. The trial court then dismissed the action on the buyer's motion because Plein had not requested a preliminary injunction or restraining order barring the sale. Our Supreme Court affirmed, holding that filing a lawsuit challenging the underlying obligation was insufficient to halt the sale under the Act and that the party must obtain a preliminary injunction or restraining order.[8] Citing earlier Court of Appeals decisions with approval, the Supreme Court agreed that "any objection to the trustee's sale is waived where presale remedies are not pursued."[9]
¶ 12 The Browns argue that they did not have knowledge of their claims as required for waiver. They primarily argue that they did not have the benefit of counsel and were ignorant of the legal bases for their claims. In the context of applying the statute of limitations, our Supreme Court has held that a person is not required to have knowledge of the existence of a legal cause of action, but merely knowledge of the facts necessary to establish the elements of the claim.[10] Similarly, in applying the waiver doctrine, a person is not required to have knowledge of the legal basis for his claim, but merely knowledge of the facts sufficient to establish the elements of a claim that could serve as a defense to foreclosure. In Peoples National Bank of Washington v. Ostrander,[11] the plaintiff brought an unlawful detainer action to obtain possession of property purchased at a trustee's sale. The defendants alleged that the plaintiff had obtained the deed of trust by fraud, by representing that the document defendants signed was a mortgage, not a trust deed.[12] However, the evidence showed that the defendants knew several months before the trustee's sale that the document they had signed was a trust deed, not a mortgage.[13] Because the defendants knew the facts that formed the basis for their fraud claim but failed to bring an action to restrain the sale, they could not *237 assert fraud as a defense.[14] The court held that to allow such a claim after the sale "would be to defeat the spirit and intent of the trust deed act."[15]
¶ 13 Similarly, in Universal Life Church v. GMAC Mortgage Corp.,[16] the U.S. District Court for the Western District of Washington held that the plaintiffs had waived their claims because the three requirements of waivernotice of the sale, knowledge of the claims, and failure to restrain the salewere met.[17] In that case, the court found that the primary plaintiff was aware of the problem underlying his claims because he had contacted the loan servicing company about it.[18] The plaintiffs also argued that, before the sale, they lacked the means to obtain counsel.[19] However, the court correctly noted that "inability to retain counsel ... is not an excuse acknowledged in the waiver doctrine."[20]
¶ 14 Here, the record shows that, several months before the sale, the Browns had actual or constructive knowledge of the facts that formed the basis for their claims. A person is deemed to have constructive knowledge of a fact if a person exercising reasonable care could have known that fact.[21] On October 19, 2001, The Browns signed loan documents that contained the terms and conditions, points and fees charged, and applicable interest rates for their loans. They also signed a separate insurance disclosure statement for each loan, which described in detail the terms and limitations of the insurance coverage on each loan. The insurance disclosure statement they signed for the first position loan indicated that it provided single life coverage only. The insurance disclosure statement for the second position line of credit stated that it provided single life, disability, and unemployment coverage. The first page of this second disclosure included a notice that disability insurance was not available on loans exceeding $50,000 and that unemployment insurance was not available on loans exceeding $35,000. Moreover, the Browns filed a complaint with the Office of the Attorney General on March 14, 2003, two months before the sale, alleging many of the same facts that form the basis for this action. No trier of fact could reasonably conclude that the Browns did not have constructive knowledge of the facts that formed the basis for their claims.
¶ 15 Although the elements of waiver have been met, the Browns argue that waiver does not apply to their claims for money damages. They contend that a postsale claim for damages does not interfere with the three goals of the Act because it does not directly affect the title obtained by a bona fide purchaser. We disagree. Courts that have considered the issue have concluded that a failure to seek presale remedies under the Act bars a borrower's claim arising out of any underlying obligation secured by the foreclosed deed of trust.[22]
¶ 16 In In re Marriage of Kaseburg,[23] the wife alleged that her husband had committed fraud, waste, and other financial misconduct with regard to real property the couple had *238 previously owned.[24] Before separating, the couple had executed an $850,000 promissory note and deed of trust on the home in favor of the husband's parents, who had loaned them money for building the home and other living expenses.[25] After the couple separated, but before dissolution was final, the parents foreclosed on the deed of trust.[26] The parents were the successful bidders at the trustee's sale and took title to the home.[27] At the dissolution trial, the wife argued that because she had been a victim of fraud by her husband, she should be awarded her community interest in the property.[28] Although the home was no longer an asset before the court for division, the trial court awarded the wife a judgment for $150,000 as her portion of the community's former interest in the property.[29] Division Two of this court reversed, holding that the trial court abused its discretion because the promissory note and community interest in the home were legally extinguished in the foreclosure sale. Therefore, the amount of the debt and value of the property were not before the trial court for valuation or distribution.[30] Because the wife had received proper notice of the nonjudicial foreclosure but did not seek to enjoin the sale, she waived her right to contest the underlying obligation.[31]
¶ 17 In Hallas v. Ameriquest Mortgage Co.,[32] the court held that Washington's waiver doctrine applies to bar postsale challenges to both the foreclosure process and the underlying obligation. In Hallas, the borrower/grantor brought several claims, including claims based on the lender's alleged failure to provide required disclosures regarding finance charges and interest.[33] Since the claims were related either to the execution of the underlying trust deed or to the foreclosure, they could have been asserted as defenses to foreclosure before the sale.[34] Because the plaintiff had received notice of the sale, had actual or constructive knowledge of her alleged defenses to foreclosure, and failed to restrain the sale, the court held that she had waived her right to bring those claims.[35]
¶ 18 Similarly, the court dismissed negligence claims under Washington's waiver doctrine in Universal Life Church v. GMAC Mortgage Corp. The borrower had received notice of the trustee's sale, including the right to enjoin the sale under the Act.[36] The plaintiffs argued that the waiver doctrine should not apply to their tort claims.[37] Because the requirements of notice, knowledge of a defense, and failure to enjoin the sale were met, the claims were waived.[38] The court held that "plaintiffs failed to invoke the remedies provided in the Deed of Trust Act," and therefore "they shall not now be allowed to circumvent the purposes of the Act by couching their claims in tort language."[39]
¶ 19 Here, as in Hallas and Kaseburg, each of the Browns' claims relates to the *239 underlying obligation. The loan documents and insurance disclosure notices signed by the Browns to close their transactions with Household provided them with constructive notice of their claims. Any of those claims could have provided a defense to the foreclosure. Like the plaintiffs in Universal Life Church, the Browns cannot bring tort claims after a trustee's sale when they failed to invoke the remedies that were available to them before the sale.
¶ 20 The application of the waiver doctrine to claims arising out of underlying obligations furthers the three goals of the Deed of Trust Act: "(1) that the nonjudicial foreclosure process should be efficient and inexpensive, (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure, and (3) that the process should promote stability of land titles."[40] To except tort or other claims for money damages from the waiver provision would frustrate the purposes of the Act because lenders understandably may not be willing to utilize a nonjudicial foreclosure procedure in which the trustee's sale bars any deficiency judgment[41] but leaves the lender subject to potential liability arising out of the underlying obligation even after the property securing the deed of trust has been sold.
¶ 21 The Browns argue that application of the waiver doctrine in this context "prevents homeowners from having adequate opportunities to defend themselves."[42] However, our Supreme Court has stated that "[a]dequate remedies to prevent wrongful foreclosure exist in the presale remedies, and finding waiver in these circumstances furthers the goals of providing an efficient and inexpensive foreclosure process and promoting the stability of land titles."[43]
¶ 22 They also argue that the requirement that a party obtain a preliminary injunction is overly burdensome because to obtain a preliminary injunction a party must show that he is likely to prevail on the merits.[44] Thus, a party who files a lawsuit after the initiation of the foreclosure process and unsuccessfully attempts to obtain a preliminary injunction restraining the sale could prevail at trial yet be barred from obtaining relief. However, that issue is not before us.[45] Here, the Browns failed to pursue presale remedies under the Act and then filed this lawsuit two years after the trustee's sale. To allow a challenge to the underlying obligation after a sale in these circumstances would "defeat the spirit and intent of the trust deed act."[46]
¶ 23 Finally, we note that the legislature recently conducted an extensive review of the Deed of Trust Act. Although it amended the Act considerably, the legislature did not modify the application of the waiver doctrine. We interpret the legislature's inaction as acquiescence in the courts' interpretation of the waiver doctrine.[47] The legislature's clarification that a trustee's sale may be restrained for "any proper legal or equitable ground"[48] without any further amendment of RCW 61.24.130 thus confirms that parties must either pursue presale remedies or waive their right to bring any claims relating to obligations secured by the foreclosed deed of trust.
¶ 24 Our decision maintains the statutory balance between the first two goals of the *240 Act. Household employed an efficient and inexpensive nonjudicial foreclosure process while the Browns were provided an adequate opportunity to assert their rights arising out of any underlying obligation before the trustee's sale. That sale terminated the financial relationship between Household and the Browns, leaving each free from any further claim by the other arising out of their loan transactions.

Conclusion
¶ 25 The Browns waived their claims by failing to restrain the sale as required by the Deed of Trust Act. Because these claims are waived, we do not reach the merits of their individual claims. The order granting summary judgment is affirmed.
WE CONCUR: SCHINDLER C.J., and BECKER J.
NOTES
[1] Former RCW 61.24.130 (1998), amended by Laws of 2008, ch. 153, § 5. This statute requires five days notice to the trustee.
[2] Cox v. Helenius, 103 Wash.2d 383, 388, 693 P.2d 683 (1985).
[3] Former RCW 61.24.040 (1998), amended by Laws of 2008, ch. 153, § 3.
[4] Plein v. Lackey, 149 Wash.2d 214, 227-29, 67 P.3d 1061 (2003) (citing Cox, 103 Wash.2d at 388, 693 P.2d 683).
[5] 149 Wash.2d 214, 67 P.3d 1061 (2003).
[6] Plein, 149 Wash.2d at 220, 67 P.3d 1061.
[7] Plein, 149 Wash.2d at 220, 67 P.3d 1061.
[8] Plein, 149 Wash.2d at 228, 67 P.3d 1061 (quoting Cox, 103 Wash.2d at 388, 693 P.2d 683).
[9] Plein, 149 Wash.2d at 229, 67 P.3d 1061.
[10] Douchette v. Bethel Sch. Dist. No. 403, 117 Wash.2d 805, 814, 818 P.2d 1362 (1991).
[11] 6 Wash.App. 28, 491 P.2d 1058 (1971).
[12] Ostrander, 6 Wash.App. at 30, 491 P.2d 1058.
[13] Ostrander, 6 Wash.App. at 32, 491 P.2d 1058.
[14] Ostrander, 6 Wash.App. at 32, 491 P.2d 1058.
[15] Ostrander, 6 Wash.App. at 32, 491 P.2d 1058.
[16] No. C06-651RSM, 2007 WL 1185861, 2007 U.S. Dist. lexis 29333 (W.D. Wash. April 20, 2007). We cite this unpublished opinion under FED. R.APP. P. 32.1, which provides that courts may not prohibit or restrict the citation of unpublished federal judicial opinions, orders, judgments, or other written dispositions issued after January 1, 2007.
[17] Universal Life Church, 2007 WL 1185861 at *4, 2007 U.S. Dist. lexis 29333, at *10.
[18] Universal Life Church, 2007 WL 1185861 at *2, 2007 U.S. Dist. lexis 29333, at *5.
[19] Universal Life Church, 2007 WL 1185861 at *4, 2007 U.S. Dist. lexis 29333, at *10.
[20] Universal Life Church, 2007 WL 1185861 at *4, 2007 U.S. Dist. lexis 29333, at *10.
[21] Denaxas v. Sandstone Court of Bellevue, L.L.C., 148 Wash.2d 654, 667, 63 P.3d 125 (2003).
[22] See In re Marriage of Kaseburg, 126 Wash.App. 546, 108 P.3d 1278 (2005), Hallas v. Ameriquest Mortgage Co., 406 F.Supp.2d 1176 (D.Or.2005) and Universal Life Church v. GMAC Mortgage Corp., 2007 WL 1185861, 2007 U.S. Dist. lexis 29333.
[23] 126 Wash.App. 546, 108 P.3d 1278 (2005).
[24] Kaseburg, 126 Wash.App. at 549, 108 P.3d 1278.
[25] Kaseburg, 126 Wash.App. at 549, 108 P.3d 1278.
[26] Kaseburg, 126 Wash.App. at 549-50, 108 P.3d 1278.
[27] Kaseburg, 126 Wash.App. at 551, 108 P.3d 1278.
[28] Kaseburg, 126 Wash.App. at 554-55, 108 P.3d 1278.
[29] Kaseburg, 126 Wash.App. at 555, 108 P.3d 1278.
[30] Kaseburg, 126 Wash.App. at 559, 108 P.3d 1278.
[31] Kaseburg, 126 Wash.App. at 559, 108 P.3d 1278.
[32] 406 F.Supp.2d 1176 (D.Or.2005).
[33] Hallas, 406 F.Supp.2d at 1181.
[34] Hallas, 406 F.Supp.2d at 1181-82.
[35] Hallas, 406 F.Supp.2d at 1182.
[36] Universal Life Church, 2007 WL 1185861 at *2, 2007 U.S. Dist. lexis 29333, at *4.
[37] Universal Life Church, 2007 WL 1185861 at *3, 2007 U.S. Dist. lexis 29333, at *8.
[38] Universal Life Church, 2007 WL 1185861 at *4, 2007 U.S. Dist. lexis 29333, at *10-11.
[39] Universal Life Church, 2007 WL 1185861 at *4, 2007 U.S. Dist. lexis 29333, at *11.
[40] Plein, 149 Wash.2d at 225, 67 P.3d 1061.
[41] See RCW 61.24.100 and Beal Bank, SSB v. Sarich, 161 Wash.2d 544, 167 P.3d 555 (2007).
[42] App. Br. at 28.
[43] Plein, 149 Wash.2d at 228, 67 P.3d 1061 (citing Country Express Stores v. Sims, 87 Wash.App. 741, 752, 943 P.2d 374 (1997)).
[44] San Juan County v. No New Gas Tax, 160 Wash.2d 141, 154, 157 P.3d 831 (2007).
[45] At least one commentator has suggested that an injured party who has unsuccessfully attempted to enjoin the trustee's sale may still have an action for damages for wrongful foreclosure. Joseph L. Hoffman, Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington, 59 WASH. L.REV, 323, 337 (1984).
[46] Ostrander, 6 Wash.App. at 32, 491 P.2d 1058.
[47] In re the Estate of Ratcliff, 95 Wash.2d 62, 621 P.2d 730 (1980).
[48] RCW 61.24.130(1) (emphasis added). The former version stated "any proper ground." Former RCW 61.24.130(1) (1998), amended by Laws of 2008, ch. 153, § 5.