[No. 42265-4-II.   Division Two.   August 28, 2012.]

TAMARA FRIZZELL, *Appellant*, v. BARBARA MURRAY ET AL.,
*Respondents*.

*Dan R. Young,* for appellant.

*Darren R. Krattli* (of *Eisenhower and Carlson PLLC*), for respondent.

¶1 JOHANSON, A.C.J. — Despite her relatively low income, Tamara Frizzell received a loan secured by her home from lenders Gregory and Barbara Murray.[1] She quickly defaulted and the Murrays foreclosed on her home. But before the trustee's sale, Frizzell sought and obtained an order restraining the sale, conditioned on Frizzell's depositing a $15,000 payment and $10,000 bond into the court registry by the following morning. Frizzell failed to meet this condition, and a trustee sold her home the next day. Frizzell then sued the Murrays on various common law and statutory grounds, but the trial court granted the Murrays' summary judgment motion, reasoning that Frizzell waived her right to postsale relief because she failed to actually restrain the trustee's sale. On appeal, Frizzell claims that the trial court erred in granting summary judgment because (1) she did not waive her right to postsale relief and (2) genuine issues of material fact existed in her original complaint regarding (a) her capacity to contract, (b) the loan's purpose, (c) whether the loan amounted to a de facto sale, and (d) other statutory-based claims. We reverse the trial court's summary judgment order because Frizzell did not waive her right to postsale relief; we do not reach Frizzell's other claims.

## FACTS

¶2 Frizzell owned real estate, and her friend, Douglas Baer, had a power of attorney signed by Frizzell authorizing him to engage in financial transactions on her behalf.[2] In 2008, Frizzell told Baer that she wanted a $20,000 loan to

---

[1] For clarity, we refer to Gregory Murray as "Gregory" and Barbara Murray as "Barbara."

[2] Baer believed Frizzell's property—a house with a fish pond, front deck, fruit trees, and a yard—was worth roughly $250,000. The property value had been assessed at $225,000, and Frizzell estimated its market value at $300,000.

pay some past-due bills. Baer called a phone number from a newspaper advertisement for a business that loans money against real estate and spoke with Gregory about a $20,000 loan. Gregory offered Baer a better interest rate on a larger loan, and, according to Baer, "[t]he amount of the loan increased over time," to $100,000. Clerk's Papers (CP) at 146.

¶3 Though Frizzell and Baer agreed that Baer would control the money, and though Baer presented to Gregory and Barbara his power of attorney to act on Frizzell's behalf, Barbara refused to loan the money to Baer and, instead, desired to loan the money directly to Frizzell. Frizzell had no involvement in the loan negotiation or lending process, but she did meet with Barbara for a half hour to sign the final loan papers, securing the loan with a deed of trust on her house.

¶4 The $100,000 loan required Frizzell to pay a $1,000 monthly payment, which covered the interest only—and full repayment was due in three years. Gregory also explained to Baer that the Murrays offered loans only for "business purposes" and not for personal uses. CP at 89. He provided Baer loan paperwork and explained that Frizzell needed to complete it before the issuance of any loan. Frizzell had no business to operate, but Baer stored between 40 and 50 wheelchairs and scooters at Frizzell's house and suggested they start a wheelchair and scooter business. Neither Frizzell nor Baer had business experience or business knowledge generally, but the Murrays never requested that Frizzell supply them a business plan or business proformas. Barbara did note Baer's collection of wheelchairs and scooters, and she understood that Baer "was good at fixing things" and "had a connection in Bellevue or Redmond" with whom he planned to do business. CP at 207. Barbara did not ask how, specifically, Frizzell and Baer would use the loan proceeds.

¶5 On August 26, 2008, Frizzell submitted to the Murrays a completed "Business Real Estate Loan Applica-

tion," a declaration of purpose, and other paperwork. CP at 255. In her completed application, Frizzell explained that the loan would be used for a "wheelchair/scooter business," and, when prompted to list any liabilities, Frizzell wrote "Hard Cash Loan[.] This Info. Should Not Matter." CP at 100, 101 (some capitalization omitted). She listed the loan's uses on the declaration of purpose as "wheelchair + scooter business." CP at 105 (some capitalization omitted). Frizzell also signed a disclosure form that warned, "the borrower is encouraged to seek there [sic] own legal advice in all maters [sic] with regard to this loan prior to signing." CP at 109.

¶6 After the Murrays subtracted the loan's fees, Frizzell received just under $88,000. Frizzell used the loan to pay bills, and then she bought roughly $60,000 in oil industry stocks on eTrade—stocks that plummeted, and Frizzell lost her investment. Frizzell made the first three scheduled $1,000 payments, and the Murrays received the last payment on December 3, 2008. Then Frizzell stopped making any payments. Barbara initiated the foreclosure process on Frizzell's home through a nonjudicial sale under the deed of trust, and a trustee's sale was scheduled for February 19, 2010.

## Procedural History

¶7 Before the trustee's sale, Frizzell filed a civil action against the Murrays. Her complaint alleged a number of legal and equitable grounds for relief that would provide a basis for restraining the trustee's sale, and she sought relief in the form of money damages for statutory violations, invalidation of the promissory note and deed of trust, and an injunction "barring enforcement of the deed of trust through foreclosure sale." CP at 8.

¶8 During her deposition, Frizzell explained that she did not understand what the "business loan" meant, expressing, "I can't say, because I don't understand what went on." CP at 259 (emphasis omitted). When asked if she understood

that she was "borrowing [the] funds from the Murrays[,]" Frizzell responded, "I'm not sure." CP at 262 (emphasis omitted). Baer opined that offering a loan to Frizzell "was like giving the money to a small child who had no conception of how to spend the money, what would be required to pay it back, and what would happen if it were not paid back." CP at 146. Frizzell acknowledged that she suffered from a learning disability, and a clinical psychologist, Dr. Mark Whitehill, stated that after observing and testing Frizzell, he believed she "is characterologically disposed to conform to what she believes others want, and to keep her own feelings suppressed. Had she believed that the Murrays wanted her to sign the loan agreement, in all likelihood she would have felt compelled to do so." CP at 197. He added that Frizzell suffers severe memory deficits, strongly suggestive of "incipient dementia" that affects her ability to remember what she would have been told about the "nature, effect, and terms" of the loan, as well as the ability to make rational decisions based on that memory. CP at 197. Ultimately, he expressed significant concerns about Frizzell's capacity to contract.

¶9 Frizzell also sought to enjoin the trustee's sale, and on February 18, 2010, the trial court entered an order enjoining the trustee's sale scheduled for the following day, "conditioned upon plaintiff's payment into the registry of the court the sum of $15,000 representing arrearages on the deed of trust and a bond in the sum of $10,000 on or before February 19, 2010 at 9:45 a.m." CP at 125. The injunction lapsed when Frizzell failed to remit the $15,000 and post the bond by the following morning. The trustee foreclosed on the home, and Barbara purchased the property at the sale and ejected Frizzell from the property. Following discovery, the Murrays moved to dismiss all of Frizzell's claims on summary judgment. First, the Murrays moved that the trial court dismiss Frizzell's claim on summary judgment because she failed to restrain the trustee's sale and thus waived all claims and defenses relating to the deed of trust

and promissory note. Second, in the alternative, the Murrays moved that the trial court enter partial summary judgment regarding Frizzell's competency to contract, as well as the propriety of the transaction under various state statutes. The trial court granted the Murray's motion for summary judgment on all of Frizzell's claims "based on the Plaintiff's failure to obtain pre-sale injunctive relief." CP at 305. Frizzell timely appeals.

## ANALYSIS

¶10 We review summary judgment orders de novo. *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 302, 178 P.3d 995 (2008). Under CR 56(c), summary judgment is appropriate if the record presents no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Oltman v. Holland Am. Line USA, Inc.*, 163 Wn.2d 236, 243, 178 P.3d 981, *cert. dismissed*, 554 U.S. 941 (2008).

¶11 Frizzell argues that the trial court erred in granting summary judgment because she did not waive her right to seek postsale relief when she sought and obtained an order restraining the trustee's sale. We agree. Waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of relinquishment of such right, and it may result from an express agreement or may be inferred from circumstances indicating an intent to waive. *Lande v. S. Kitsap Sch. Dist. No. 402*, 2 Wn. App. 468, 474, 469 P.2d 982 (1970) (citing *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954)). Waiver is also an equitable principle that defeats someone's legal rights where the facts support an argument that a party relinquished its rights by delaying in asserting or failing to assert an otherwise available adequate remedy. *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 174 Wn.2d 560, 569, 276 P.3d 1277 (2012).

¶12 The three goals of Washington's deeds of trust act (WDTA)[3] are (1) to provide an efficient and inexpensive nonjudicial foreclosure process, (2) to provide adequate opportunities for interested parties to prevent wrongful foreclosures, and (3) to promote stability of land titles. *Plein v. Lackey*, 149 Wn.2d 214, 225, 67 P.3d 1061 (2003). And the WDTA provides the only means by which a grantor may preclude a sale once foreclosure has begun. *Cox v. Helenius*, 103 Wn.2d 383, 388, 693 P.2d 683 (1985). Under the WDTA,

> Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit *may* result in a waiver of any proper grounds for invalidating the Trustee's sale.

RCW 61.24.040(1)(f) (emphasis added). The legislature's use of "may" in this statute neither requires nor intends us to strictly apply waiver rules; so under this statute, we apply waiver only where it is equitable under the circumstances and serves the WDTA's goals. *Albice*, 174 Wn.2d at 570.

¶13 The trial court here erred when it found that Frizzell waived her right to postsale relief and dismissed her claim on summary judgment. For instance, the Murrays cite RCW 61.24.040(1)(f) in their argument that Frizzell's failure to actually enjoin the trustee's sale resulted in her waiving her right to pursue all postsale relief. But, RCW 61.24.040(1)(f) simply addresses how one may challenge a trustee's sale or seek to invalidate a trustee's sale. It expressly states that failure to bring a lawsuit to restrain a trustee's sale may result in waiving the right to invalidate the trustee's sale. Frizzell's claims, however, extend beyond her attempt to invalidate the trustee's sale. Here, Frizzell alleged a Consumer Protection Act, chapter 19.86 RCW,

---

[3] Ch. 61.24 RCW.

violation and sought monetary damages. RCW 61.24-.040(1)(f) does not preclude these forms of relief.

¶14 Next, the Murrays cite *Plein* and *Brown v. Household Realty Corp.*, 146 Wn. App. 157, 189 P.3d 233 (2008), *review denied*, 165 Wn.2d 1023 (2009), to support their argument that Frizzell's failure to actually obtain injunctive relief waived her right to any postsale claims. These cases, though, are distinguishable from the present matter.

¶15 *Plein* involved a corporate officer who brought an action for nonjudicial foreclosure on a deed of trust on real property after the corporation defaulted on a promissory note. *Plein*, 149 Wn.2d at 220. A junior lienholder, Plein, brought his own action against the corporate officer seeking to permanently enjoin the trustee's sale and to obtain a declaration voiding the deed of trust. *Plein*, 149 Wn.2d at 220. But the trial court dismissed Plein's complaint on summary judgment, and the Supreme Court affirmed the trial court, holding that Plein had waived his right to contest nonjudicial foreclosure and the trustee's sale because he did not seek a preliminary injunction or any other order to restrain the sale. *Plein*, 149 Wn.2d at 229. The Supreme Court stated, "We hold that by failing to obtain a preliminary injunction or other restraining order restraining the trustee's sale, as contemplated by RCW 61.24.130, Plein waived any objections to the foreclosure proceedings." *Plein*, 149 Wn.2d at 229. Here, unlike Plein, Frizzell not only sought a preliminary injunction to restrain the trustee's sale, but she also obtained a restraining order.[4] Accordingly, *Plein* is distinguishable from the present matter.

¶16 In *Brown*, the borrowers under deeds of trust, the Browns, brought an action against their lender, Household Realty, two years after a foreclosure on the Browns' property, alleging multiple common law and statutory claims.

---

[4] Frizzell did not restrain the looming trustee's sale because the trial court conditioned its restraining order on Frizzell's paying $15,000 in arrearages and a $10,000 bond into the court registry by the following morning. Frizzell did not meet these conditions.

*Brown*, 146 Wn. App. at 160. The trial court granted summary judgment in Household's favor and Division One of this court affirmed, holding that the Browns waived their claims by failing to request a preliminary injunction or restraining order enjoining the sale under the WDTA. *Brown*, 146 Wn. App. at 171.

¶17 Again, *Brown* is distinguishable. There, Division One held that a borrower waives claims against a lender by failing to timely request a preliminary injunction or restraining order enjoining nonjudicial foreclosure sale at least five days before the sale date. *Brown*, 146 Wn. App. at 163, 170. But the court left unanswered whether "a party who files a lawsuit after the initiation of the foreclosure process and unsuccessfully attempts to obtain a preliminary injunction restraining the sale could prevail at trial yet be barred from obtaining relief." *Brown*, 146 Wn. App. at 170. Unlike the Browns, Frizzell filed a complaint seven days before the sale seeking an injunction barring enforcement of the deed of trust through the trustee's sale, as well as a motion to enjoin the trustee sale three days before the scheduled foreclosure; and the trial court enjoined the trustee sale, provided that Frizzell post a bond and pay arrearages. Therefore, *Brown* differs from the present matter.

¶18 Moreover, in *Albice* the Supreme Court clarified how waiver applies under the WDTA. The court held that we should not rigidly apply the WDTA's waiver rule but instead apply it as an equitable tool only where, for example, the facts support an argument that a party relinquished its rights by delaying in asserting or failing to assert an otherwise available adequate remedy. *See Albice*, 174 Wn.2d at 570. And, ultimately, a party must intentionally or voluntarily waive its legal rights to effectuate a valid waiver; but here, Frizzell never intended or volunteered to relinquish her right to raise claims against the Murrays. Unlike the borrowers in *Plein* and *Brown*, Frizzell pursued her claims before the trustee's sale and actually obtained an

order restraining the trustee's sale, though on the condition that she pay a sizeable sum of money and bond by the following morning. *Albice* dictates that waiver applies only when equitable where, for example, the facts support an argument that Frizzell relinquished her rights by delaying in asserting or failing to assert an otherwise available adequate remedy. *See Albice*, 174 Wn.2d at 570. Such was not the case here.

¶19 Frizzell did not delay or fail to assert an available adequate remedy. Accordingly, it would be inequitable to apply waiver under these facts.[5] We hold that the trial court erred in determining that Frizzell waived her right to relief by failing to obtain presale relief and in granting the Murray's summary judgment motion. Therefore, we remand to the trial court for action consistent with our decision.

QUINN-BRINTNALL and VAN DEREN, JJ., concur.

Review granted at 176 Wn.2d 1011 (2013).

---

[5] In addition, we also agree with Frizzell that if she lacked the capacity to contract, it would be inequitable to conclude that she voluntarily relinquished known rights related to that contract. But the trial court did not reach Frizzell's other issues because it granted summary judgment on an alternative ground.