# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| MARISA BAVAND, | ) | No. 68217-2-I |
|  | ) |  |
| Appellant, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ONEWEST BANK, F.S.B., a federally chartered Savings Bank; REGIONAL TRUSTEE SERVICES CORPORATION, a Washington corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation, | ) | PUBLISHED |
|  | ) |  |
|  | ) | FILED: September 9, 2013 |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| Respondents, | ) |  |
|  | ) |  |
| DOE DEFENDANTS 1-10, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

Cox, J. — Primarily at issue in this appeal of a CR 12(b)(6) dismissal is whether OneWest Bank, FSB and the Mortgage Electronic Registration Systems, Inc. (MERS) met their burden to show that Marisa Bavand failed to show any set of facts that would justify granting relief.[1] Also at issue is whether the trial court

---

[1] See Postema v. Pollution Control Hearings Bd., 142 Wn.2d 68, 122, 11 P.3d 726 (2000) (noting that a motion to dismiss pursuant to CR 12(b)(6) should be granted only if the plaintiff cannot prove any set of facts that would justify recovery).

properly granted the motion to validate the trustee's sale of Bavand's property by Regional Trustee Services Corporation (RTS).

We hold that the motion to dismiss was, for the most part, erroneously granted. The order validating the trustee's sale was also erroneously granted. We affirm in part, reverse in part, and remand for further proceedings.

In 2007, Marisa Bavand obtained a loan for $722,950 from IndyMac Bank, FSB. The loan was evidenced by a promissory note that was secured by a deed of trust encumbering her property. The deed of trust named "IndyMac Bank, F.S.B." as the "Lender" and Ticor Title Insurance Co. as the "Trustee." It also named MERS as "the beneficiary under this Security Instrument" and "as a nominee for Lender and Lender's successors and assigns."

On December 15, 2010, "OneWest Bank, FSB," claiming to be the "present beneficiary" of Bavand's deed of trust, executed an Appointment of Successor Trustee.[2] This document purported to appoint RTS "as Successor Trustee" under Bavand's deed of trust.[3] It appears that OneWest executed this assignment anticipating the commencement of a nonjudicial foreclosure of the deed of trust by RTS.

On December 16, 2010, one day after this purported appointment of RTS as successor trustee, MERS executed an Assignment of Deed of Trust.[4] This document stated, among other things, that:

---

[2] Clerk's Papers at 27-28.

[3] Id.

[4] Id. at 24-25.

> FOR VALUE RECEIVED, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK, by these presents, grants, bargains, sells, assigns, transfers and sets over unto OneWest Bank, FSB, all beneficial interest under that certain Deed of Trust dated 8/7/2007, and executed by Marisa Bavand . . . .
>
> Together with the Note or Notes therein described . . . .[5]

On January 6, 2011, RTS commenced a nonjudicial foreclosure proceeding of the deed of trust encumbering Bavand's property by mailing a "Notice of Foreclosure" to her for allegedly defaulting in payments under the promissory note. The trustee's sale was scheduled for May 13, 2011.

Eight days before the then scheduled trustee's sale, Bavand commenced this action against OneWest, MERS, RTS, and others, seeking declaratory and other relief. RTS postponed the scheduled trustee's sale to a later date upon learning of this action.

Over a month after filing this action, Bavand moved for a TRO to enjoin the rescheduled trustee's sale of her property. On June 10, the trial court denied her motion because of her failure to provide proof of service and proper notice of the motion. But the court granted Bavand's renewed motion for a TRO, and an order restraining the trustee's sale was entered on June 17, 2011. The order was expressly conditioned on Bavand providing a "[b]ond . . . in [the] amount of $5,041.08 payable 6/17/11 and on the 17th of every month thereafter unless

---

[5] Id. at 24.

3

amended by court order."[6] At oral argument in this appeal, Bavand conceded that she did not make any of these payments.

RTS conducted the trustee's sale of the Bavand property sometime on June 17, the same date the TRO was entered. At oral argument in this appeal, the parties confirmed to this court that, following this sale, RTS recorded with the county auditor a trustee's deed that conveyed the property to "OWB REO, Inc," the successful bidder at this trustee's sale.

By its consolidated order entered on November 29, 2011, the trial court ruled on several motions made by Bavand, two by OneWest and MERS, and others by RTS. Specifically, this order denied most of Bavand's motions and granted all of the defendants' motions. Among the latter motions, the court granted the joint CR 12(b)(6) motion to dismiss of OneWest and MERS as well as RTS's motion to validate its June 17, 2011 trustee's sale. On December 20, 2011, the trial court denied Bavand's motion for reconsideration of the order to vacate the trustee's sale.

This appeal followed.

## FAILURE TO STATE A CLAIM

Bavand first argues that the trial court erred when it granted MERS and OneWest's joint CR 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Specifically, she argues that a material procedural defect in the appointment of RTS as successor trustee under the deed of trust made the trustee's sale invalid. We agree that Bavand has stated sufficient facts

---

[6] Id. at 97.

to demonstrate a material procedural defect in RTS's appointment as successor trustee. Thus, she has made out a claim for relief.

Under CR 12(b)(6), a motion to dismiss for failure to state a claim "should be granted only if the plaintiff cannot prove any set of facts which would justify recovery."[7] "'[A]ny hypothetical situation conceivably raised by the complaint defeats a CR 12(b)(6) motion if it is legally sufficient to support plaintiff's claim.'"[8] Such motions "should be granted only 'sparingly and with care.'"[9]

Either party may submit documents not contained in the original complaint for consideration by the court in assessing a CR 12(b)(6) motion.[10] Such submissions generally convert a CR 12(b)(6) motion into a motion for summary judgment.[11]

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

---

[7] Postema, 142 Wn.2d at 122.

[8] Bravo v. Dolsen Co., 125 Wn.2d 745, 750, 888 P.2d 147 (1995) (quoting Halvorson v. Dahl, 89 Wn.2d 673, 674, 574 P.2d 1190 (1978)).

[9] Id. (quoting Haberman v. Wash. Public Power Supply Sys., 109 Wn.2d 107, 120, 744 P.2d 1032 (1987)).

[10] Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 726, 189 P.3d 168 (2008).

[11] Hansen v. Friend, 59 Wn. App. 236, 239, 797 P.2d 521 (1990).

law.[12] This court reviews de novo a trial court's order granting summary judgment.[13]

### The Deeds of Trust Act

Chapter RCW 61.24, the Deeds of Trust Act, governs deeds of trust in Washington.

> When [a promissory note is] secured by a deed of trust that grants the trustee the power of sale [and] if the borrower defaults on repaying the underlying obligation, the trustee may usually foreclose the deed of trust and sell the property without judicial supervision.[14]

The supreme court has repeatedly stated that the Deeds of Trust Act "'must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales.'"[15]

Under the Deeds of Trust Act, only a properly appointed trustee may conduct a nonjudicial foreclosure. Moreover, only a proper beneficiary has the power to appoint a successor to the original trustee named in the deed of trust.

Former RCW 61.24.010(2) (2009) states:

---

[12] CR 54(c).

[13] Michael v. Mosquera-Lacy, 165 Wn.2d 595, 601, 200 P.3d 695 (2009).

[14] Bain v. Metro. Mortg. Group, Inc., 175 Wn.2d 83, 93, 285 P.3d 34 (2012).

[15] Schroeder v. Excelsior Mgmt. Group, LLC, 177 Wn.2d 94, 105, 297 P.3d 677 (2013) (quoting Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007); Bain, 175 Wn.2d at 93 (quoting Udall, 159 Wn.2d at 915-16)).

> The trustee may resign at its own election or be replaced by the ***beneficiary*** . . . . If a trustee is not appointed in the deed of trust, or upon the resignation, incapacity, disability, absence, or death of the trustee, or the election of the ***beneficiary*** to replace the trustee, the ***beneficiary*** shall appoint a trustee or a ***successor trustee. Only upon recording the appointment of a successor trustee in each county in which the deed of trust is recorded, the successor trustee shall be vested with all powers of an original trustee.*** [16]

The plain words of this statute establish that the beneficiary of a deed of trust is the sole entity entitled to appoint a successor trustee if the beneficiary elects to replace the original trustee named in that deed of trust. This statute makes equally clear that only upon the recording of the appointment of a successor trustee with the auditor in the relevant county is a successor trustee "vested with all the powers of an original trustee."[17] Among these powers is, of course, the power to conduct a nonjudicial foreclosure culminating in a trustee's sale.

The only reasonable reading of this statute is that the successor trustee must be properly appointed to have the powers of the original trustee.[18] Thus, a dispositive question in this appeal is whether RTS was properly appointed as a successor trustee by the beneficiary of Bavand's deed of trust. We conclude that this record shows that RTS was not properly appointed as a successor trustee.

Here, the CR 12(b)(6) motion was supported by numerous documents. Among these documents is the Appointment of Successor Trustee, dated

---

[16] (Emphasis added.)

[17] Former RCW 61.24.010(2) (2009).

[18] Id.

December 15, 2010, that "OneWest Bank, FSB" executed.[19] In that document, OneWest states that it is "the present beneficiary" of the deed of trust that Bavand executed in 2007.[20] The jurat indicates the document was signed in Texas on the same date as the date of the document: December 15, 2010.[21]

Notwithstanding OneWest's representation in this appointment that it was "the present beneficiary" of Bavand's deed of trust, this record shows that was not true. Rather, on December 15, 2010, MERS was the named beneficiary in that instrument.[22]

We note that a thorough review of this record shows that OneWest is not named either in the deed of trust or the promissory note that Bavand executed in favor of IndyMac Bank.[23] Thus, this record fails to establish that OneWest correctly claimed on December 15, 2010 that it was then the "present beneficiary" under the deed of trust.

Because OneWest was not the beneficiary of the deed of trust at the time it attempted to appoint a successor trustee, it had no authority under former RCW 61.24.010(2) (2009) to appoint RTS as successor trustee. Absent that authority, RTS was not vested with any of the powers of the original trustee

---

[19] Clerk's Papers at 27.

[20] Id.

[21] Id. at 28.

[22] Id. at 24-25.

[23] Id. at 136-160.

under the 2011 deed of trust. Specifically, RTS had no authority to conduct a foreclosure and trustee's sale of Bavand's property.

As we noted earlier in this opinion, MERS was the named beneficiary of the deed of trust as of the date of OneWest's purported appointment of RTS as successor trustee. Whether MERS, the named beneficiary at the time of the purported appointment of RTS, was authorized to cure the defect in the appointment of the successor trustee is a related question. We conclude MERS was not so authorized. That is because MERS is not a proper beneficiary under the Deeds of Trust Act. The reason for this is that a proper beneficiary under the Act must be a "holder" of the note or other secured obligation.[24] MERS is not a holder of the note in this case.

MERS, a consortium of mortgage investment companies, altered this state's traditional three-party structure of a deed of trust.[25] As our supreme court explained in Bain v. Metropolitan Mortgage Group, Inc., the system MERS established changed "'a traditional three party deed of trust [into] a four party deed of trust, wherein MERS would act as the contractually agreed upon beneficiary for the lender and its successors and assigns.'"[26] Thus,

> "the MERS business plan . . . is based in large part on amending this traditional model . . . . MERS is, in fact, neither a borrower nor a lender, but rather purports to be both 'mortgagee of record' and a 'nominee' for the mortgagee."[27]

---

[24] Bain, 175 Wn.2d at 102-04; former RCW 62A.1-201(20) (2001).

[25] Id. at 94, 96.

[26] Id. at 96.

[27] Id. at 97 (quoting In re Agard, 444 B.R. 231, 247 (Bank. E.D. NY 2011)).

In <u>Bain,</u> the supreme court decided the effect of this change on the traditional structure of the parties to a deed of trust.[28] Specifically, it held that MERS cannot be a lawful beneficiary under our state's statutes.[29] The plain language of RCW 61.24.005(2) defines a "beneficiary" as "the *holder* of the instrument or document evidencing the obligations secured by the deed of trust . . . ."[30] As the supreme court concluded in <u>Bain</u>, "if MERS never 'held the promissory note' then it is not a 'lawful beneficiary.'"[31]

We note that the <u>Bain</u> court declined to answer what legal effect arose from MERS acting as an unlawful beneficiary under our state statutes.[32] It declined to do so based on both an insufficient record in that case and the briefing then before it.[33] In this case, neither of these obstacles to the resolution of the legal issue before us is present.

Here, OneWest and MERS both conceded at oral argument in this appeal that MERS never had possession of the promissory note that Bavand executed in favor of IndyMac Bank in 2007. A legal consequence of this failure to establish possession of the promissory note is that MERS was never a "holder" of this

---

[28] <u>Id.</u> at 91.

[29] <u>Id.</u> at 108.

[30] (Emphasis added.)

[31] <u>Bain</u>, 175 Wn.2d at 99 (quoting RCW 61.24.005(2)).

[32] <u>Id.</u> at 114.

[33] <u>Id.</u> at 110.

instrument.[34] Consequently, as the Bain court expressly held, MERS is not a proper beneficiary of this deed of trust securing Bavand's promissory note to IndyMac Bank because it is not a "holder" of the secured note.[35] Accordingly, MERS also lacked any authority under former RCW 61.24.010(2) (2009) to appoint RTS as the successor trustee.

This is a material procedural defect and not a mere technicality. The purported appointment of RTS as successor trustee by OneWest on December 15, 2010 was invalid because this institution was not then a beneficiary of the deed of trust. Rather, MERS was then the purported beneficiary under the deed of trust. Further, MERS itself had no authority to appoint RTS because it was not the "holder" of the note. Consequently, MERS was not a proper beneficiary.

Without a proper appointment, RTS did not succeed to any of the original trustee's powers under the deed of trust. Specifically, it had no power to conduct a nonjudicial foreclosure and trustee's sale of Bavand's property.[36] This is a material failure to comply with the provisions of the Deeds of Trust Act.

OneWest and MERS make a number of arguments in an attempt to defeat the application of the plain words of the statute to this case. None do so.

---

[34] See RCW 62A.3-301 ("'Person entitled to enforce' an instrument means (i) the holder of the instrument . . . .").

[35] Bain, 175 Wn.2d at 104.

[36] See RCW 62A.3-301.

First, OneWest and MERS argue that Bavand has waived any claims by failing to properly pursue remedies under the terms of RCW 61.24.130 and RCW 61.24.127.[37] We disagree.

Waiver is an intentional relinquishment of a known right.[38] In the context of the Deeds of Trust Act, the supreme court recently said in Klem v. Washington Mutual Bank that waiver is an equitable doctrine.[39] "[W]e apply waiver only where it is equitable under the circumstances and where it serves the goals of the act.[40]

RCW 61.24.040, which specifically governs foreclosure and trustee's sales, provides:

> Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit *may* result in a *waiver* of any proper grounds for invalidating the Trustee's sale.[41]

RCW 61.24.130(1) of the Act further provides that a trustee's sale may be enjoined by "the borrower, grantor, any guarantor, or any person who has an interest in, lien or claim of lien against the property or some part thereof . . . ." To enjoin the sale, RCW 61.24.130 requires that "as a condition of granting the

---

[37] Appellant's Opening Brief at 11-15.

[38] Schroeder, 177 Wn.2d at 106 (quoting Bowman v. Webster, 44 Wn.2d 667, 669, 269 P.2d 960 (1954)).

[39] 176 Wn.2d 771, 783 n.7, 295 P.3d 1179 (2013).

[40] Id. (quoting Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 570, 276 P.3d 1277 (2012)).

[41] RCW 61.24.040(1)(f)(IX) (emphasis added).

restraining order or injunction," the interested party "pay to the clerk of the court the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed . . . ." The person seeking a TRO must also give "five days notice to the trustee of the time when, place where, and the judge before whom the application for the restraining order or injunction is to be made."[42]

RCW 61.24.127 contains similar language to that in RCW 61.24.040. This statute states:

> (1) The failure of the borrower or grantor to bring a civil action to enjoin a foreclosure sale under this chapter *may* not be deemed a *waiver* of a claim for damages asserting:
>
> (a) Common law fraud or misrepresentation;
>
> (b) A violation of Title 19 RCW;
>
> (c) Failure of the trustee to materially comply with the provisions of this chapter; or
>
> (d) A violation of RCW 61.24.026.[43]

Here, OneWest and MERS do not and cannot argue that Bavand failed to seek injunctive relief prior to the trustee's sale. She did. Rather, they contend that she failed to strictly conform to the provisions of relevant statutes when doing so. According to them, these failures constitute a waiver of her right to seek any relief. This claim is without merit.

---

[42] RCW 61.24.130(2).

[43] (Emphasis added.)

13

Most recently, the supreme court, in <u>Schroeder v. Excelsior Management Group, LLC</u>, reinforced the principal that waiver does not occur where the trustee's actions in a nonjudicial foreclosure are unlawful.[44] There, the grantor commenced an action to enjoin the trustee's sale and alleged that the land encumbered by the deed of trust was agricultural.[45] Under RCW 61.24.030, the deed of trust must contain a statement that the real property "is not used principally for agricultural purposes." The supreme court concluded that the trial court had improperly rejected a timely challenge to the trustee's sale of Schroeder's land.[46] "[T]he simple fact is that if Schroeder's property was primarily agricultural, then the trustee lacked the statutory power to foreclose nonjudicially"[47]

In so holding, the supreme court reinforced a basic statement of law that it originally had made in <u>Cox v. Helenius</u>: Even where a party fails to timely enjoin a trustee sale under RCW 61.24.130, if a trustee's actions are unlawful, the sale is void.[48] In such cases, there is no waiver of the right to seek and obtain relief.

Additionally, in another recent opinion, <u>Albice v. Premier Mortgage Services of Washington, Inc.</u>, the supreme court noted that the plain language of RCW 61.24.040 indicates that waiver under the Deeds of Trust Act is not to be

---

[44] 177 Wn.2d 94, 111-12, 297 P.3d 677 (2013).

[45] <u>Id.</u> at 100-01.

[46] <u>Id.</u> at 112.

[47] <u>Id.</u>

[48] 103 Wn.2d 383, 388-89, 693 P.2d 683 (1985).

rigidly applied.[49] In <u>Albice</u>, the supreme court concluded that "[w]aiver . . . cannot apply to all circumstances or types of postsale challenges."[50] It then pointed to the language of RCW 61.24.040(1)(f)(IX), which states that "'[f]ailure to bring . . . a lawsuit *may* result in waiver of any proper grounds for invalidating the Trustee's sale.'"[51]

In <u>Frizzell v. Murray</u>, Division Two echoed the supreme court's opinion in <u>Albice</u>.[52] There, the court addressed a challenge to a grantor's ability to challenge a trustee's sale.[53] Frizzell defaulted on her loan.[54] She received notification of this default and of the scheduled trustee's sale.[55] Before the trustee's sale, Frizzell filed a civil action against the Murrays. Her complaint alleged a number of legal and equitable grounds for relief that would provide a basis for restraining the trustee's sale . . . .[56] Frizzell also sought a TRO.[57] But she failed to pay the bond to secure the TRO, as required under RCW

---

[49] 174 Wn.2d 560, 570, 276 P.3d 1277 (2012).

[50] <u>Id.</u>

[51] <u>Id.</u> (emphasis added) (alterations in original) (quoting RCW 61.24.040(i)(f)(IX).

[52] 170 Wn. App. 420, 422, 283 P.3d 1139 (2012), <u>review granted</u>, 176 Wn.2d 1011 (2013).

[53] <u>Id.</u> at 422.

[54] <u>Id.</u> at 422, 424.

[55] <u>Id.</u> at 424.

[56] <u>Id.</u>

[57] <u>Id.</u>

61.24.130.[58] The trial court granted Murray summary judgment, concluding that Frizzell had waived any claims challenging the sale of the property.[59]

Division Two reversed, rejecting the trial court's analysis, holding that the under RCW 61.24.040(1)(f)(IX), "we apply waiver only where it is equitable under the circumstances and where it serves the [Deeds of Trust Act goals]."[60] Echoing Albice, the Frizzell court concluded "[t]he legislature's use of 'may' in this statute neither requires nor intends us to strictly apply waiver rules; so under this statute, we apply waiver only where it is equitable under the circumstance and serves the [Deed of Trust Act's] goals."[61]

Here, Bavand obtained a TRO on June 17, 2010, the date of the trustee's sale. But she failed to provide the security that both the order and the statute require. Further, it appears that she failed to provide the five day notice to RTS prior to seeking to enjoin the sale.

But under our case law—including Schroeder, Albice, and Frizzell—these failures cannot, by themselves, constitute a waiver of her right to relief.[62] This is particularly true in this case, where the record illustrates the invalidity of the

---

[58] Id.

[59] Id. at 424-25.

[60] Id. at 427.

[61] Id.

[62] See Frizzell, 170 Wn. App. at 422; Albice, 174 Wn.2d at 570; Schroeder, 177 Wn.2d at 112.

16

appointment of RTS as the successor trustee. This invalid appointment, in turn, made RTS's subsequent foreclosure and the trustee's sale invalid.

MERS and OneWest rely on Plein v. Lackey[63] and Brown v. Household Realty Corp.,[64] in arguing that Bavand waived any right to challenge the Deeds of Trust Act violation. These cases are distinguishable.

In Schroeder, the supreme court recently explicitly distinguished Plein and implicitly distinguished this court's opinion in Brown.[65] In Schroeder, the supreme court noted that the respondents' reliance on Plein was "misplaced."[66] "It is well settled that the trustee in foreclosure must strictly comply with the statutory requirements. A trustee in a nonjudicial foreclosure may not exceed the authority vested by that statute."[67] As the supreme court went on to recognize, Plein did not address any deficiencies either in the deeds of trusts or in failing to comply with the express provisions of the Deeds of Trust Act.[68]

Nor did this court address any such deficiencies in Brown.[69] There, it does not appear that MERS was involved in the deed of trust, nor were there any

---

[63] 149 Wn.2d 214, 227, 67 P.3d 1061, 1066 (2003).

[64] 146 Wn. App. 157, 189 P.3d 233 (2008).

[65] Schroeder, 177 Wn.2d at 111.

[66] Id.

[67] Id. at 111-12 (citing Albice, 174 Wn.2d at 568).

[68] Id. at 112.

[69] Brown, 146 Wn. App. at 164-65.

other inconsistencies that violated the Deeds of Trust Act.[70] And, this court relied on Brown's failure to bring his action claiming a violation of the Deeds of Trust Act until two years after the trustee's sale.[71] In Albice, the supreme court acknowledged that it had previously "recognized that allowing the borrower to delay asserting a defense until after the sale would have defeated the spirit and intent of the [Deeds of Trust Act.]"[72] But it then limited this recognition, noting that "[w]aiver . . . cannot apply to all circumstances or types of postsale challenges."[73] Such is the case here, where Bavand sought relief prior to the trustee's sale.

OneWest and MERS next argue that the Deeds of Trust Act has no provision that permits a cause of action for wrongful institution of foreclosure proceedings.[74] As we recently held in Walker v. Quality Loan Service Corporation of Washington, this argument is unsound.[75]

Here, as in Walker, OneWest and MERS primarily rely on Vawter v. Quality Loan Services Corp. of Washington[76] to support this assertion. In Walker

---

[70] Id.

[71] Id. at 166-67.

[72] Albice, 174 Wn.2d at 570.

[73] Id.

[74] Appellants' Opening Brief at 16.

[75] No. 65975-8-I, slip op. at 8-9 (Wash. Ct. App. Aug. 5, 2013).

[76] 707 F. Supp. 2d 1115 (W.D. Wash. 2010).

we explained why we reject the analysis and conclusion of that federal case.[77]

First, we pointed out that Vawter was decided before the supreme court's Bain decision.[78] Second, we noted that the Vawter court relied on two other federal cases decided before the legislature enacted RCW 61.24.127 and that the Vawter court failed to take into account the plain language of this section of the Deeds of Trust Act.[79] By amending RCW 61.24.127 in 2009, the legislature explicitly recognized a cause of action for damages for failure to comply with the Act.[80]

Third, we noted that the availability of causes of action under the Deeds of Trust Act could actually address some of the concerns expressed by the Vawter court regarding a rash of litigation under the Act, given the complication that the emergence of MERS has spawned.[81]

Finally, we held that, in contrast to the Vawter opinion, prejudice could be shown given the respondent's violations of the Deeds of Trust Act and the consequent effect on the appellant.[82]

Here, in addition to these reasons stated in Walker, there is another reason to reject the analysis in Vawter. Our supreme court has repeatedly

---

[77] Walker, No. 65975-8-I, slip op. at 12-15.

[78] Id. at 12.

[79] Id. at 12-13.

[80] Id. at 13.

[81] Id. at 14.

[82] Id. at 14-15.

19

stressed that our courts must be mindful that the Deeds of Trust Act should be construed to further three basic objectives.[83] They are: "(1) that the nonjudicial foreclosure process should be efficient and inexpensive; (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure; and (3) that the process should promote stability of land titles."[84]

The legislature could not have intended that the first of these three goals—an "efficient and inexpensive process" —could be accomplished at the expense of the other two. For example, OneWest, and RTS disregarded the plain words of former RCW 61.24.010(2) (2009) governing appointment of successor trustees. Without a valid appointment of a successor trustee in this case, the foreclosure and sale that followed were wrongful because they were without statutory authority. Thus, our conclusions in this case are consistent with a proper balancing of the objectives of this legislation, particularly the first two.

OneWest and MERS next contend that where a borrower has "clearly defaulted," she may not bring a claim under the Deeds of Trust Act complaining about "wrongful foreclosure." We again disagree.

In Frizzell, Frizzell also defaulted on her loan payments.[85] But, relying on the supreme court's opinion in Albice, Division Two of this court held that the plain language of the Deeds of Trust Act gave Frizzell the right to restrain the

---

[83] See Plein, 149 Wn.2d at 225 (citing Cox, 103 Wn.2d at 387).

[84] Id.

[85] Frizzell, 170 Wn. App. at 422.

nonjudicial sale of her home.[86] Under the Deeds of Trust Act, the court noted, "'Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130.'"[87] As in Frizzell, here, the Deeds of Trust Act provided Bavand with the right to restrain the sale, despite her default.

Further, the cases upon which OneWest and MERS rely do not require a different result in this case. They do not address this state's Deeds of Trust Act.[88] Thus, this argument is not persuasive.

In an attempt to avoid the effect of failing to comply with RCW 64.24.130, OneWest and MERS next argue that the trial court in this case was shown documentation that OneWest is the note holder, citing Clerk's Papers at 3 and 136-140. This appears to be an attempt to show OneWest was a beneficiary at the time of its purported appointment of RTS as successor trustee. These citations to this record do not support this argument.

The citation to Clerk's Papers 136-140 is to a document that bears a stamp near the top of the first page, stating that the document is "certified to be a

---

[86] Id. at 427.

[87] Id. (quoting RCW 61.24.040(1)(f)).

[88] See Cervantes v. Countrywide Home Loan, Inc., 656 F.3d 1034, 1038 (9th Cir. 2011) (dismissing the plaintiff class's "wrongful foreclosure" claims as interpreted under Arizona state law); see also Marks v. Green Tree Servicing and Default Resolution Network, 461 Fed. Appx. 534, 2011 WL 5316758, at *1 (9th Cir. 2011) (stating only that "Marks failed to show that she was not in default on her mortgage loan.").

true and correct *copy* of the original" note.[89] This document is attached to a legal memorandum, not any declaration or affidavit explaining more. Possession of a "true and correct *copy* of the original" note does not, of course, establish possession of the original note itself. Without possession of the note, on which OneWest relies in this case, it is not the holder of that instrument either under the Uniform Commercial Code or the Deeds of Trust Act.

We also note that nowhere in this document on which OneWest relies is there any mention of OneWest, by way of endorsement or otherwise. This further undercuts its claim that it is a holder of the instrument on which it relies to establish its status as a beneficiary for the purpose of appointing RTS as successor trustee under Bavand's deed of trust.

In rejecting this particular argument, we are aware that others have claimed that lenders must "show-me-the-note" in order to pursue foreclosure.[90] We express no opinion on the validity of such an argument. We merely point out that the representation made to the trial court in this case is not supported by this record.

Similarly, the citation to Clerk's Papers at 3 fares no better. There, Bavand admits signing a note and deed of trust in favor of IndyMac Bank. How that shows that OneWest is the holder of these instruments is left unexplained.

_____

[89] Clerk's Papers at 136 (emphasis added).

[90] See Elene-Arp v. Fed. Home Fin. Agency, No. C12-2154 RAJ, 2013 WL 1898218, at *4 (W.D. Wash. May 2013) (noting that "federal courts in Washington" have rejected "show-me-the-note" arguments).

For these reasons, this record fails to substantiate OneWest's claim that it was the holder of Bavand's note in favor of IndyMac Bank. Without such a showing, it cannot establish its beneficiary status for purposes of appointment of RTS as successor trustee.

Without squarely addressing in their briefing the failure to comply with former RCW 61.24.010(2) (2009), OneWest and MERS attempt to avoid the impact of Bain on this case. They argue that MERS neither sought to foreclose this deed of trust in its own name nor appointed RTS as successor trustee.[91] This argument fails to deal with the basic problem: the invalid appointment of RTS as successor trustee by OneWest. Whether MERS participated in the foreclosure in the ways identified does not address this problem.

For the first time at oral argument in this appeal, OneWest and MERS made a new argument that is not in their brief. They appear to argue that MERS was acting solely as a nominee for the lender when it executed the assignment to OneWest. The chief problem with this new argument is that it makes no difference to the outcome that we reach. Even if we assume that the terms of the December 16, 2010 assignment show that MERS was then acting solely as a nominee, the fact remains that the purported appointment of RTS by OneWest was done one day earlier. Thus, whether MERS was acting as a nominee when it executed the assignment is analytically irrelevant.

---

[91] Opening Brief of Respondents OneWest Bank, FSB and Mortgage Electronic Registration Systems, Inc. at 24.

Another problem is that OneWest and MERS fail to establish the scope and nature of the authority of MERS to act as nominee when it executed the December 16, 2010 assignment. MERS failed to overcome a similar agency problem in Bain.[92] Specifically, as the Bain court stated, MERS failed to offer any authority that, as the lender's nominee, it had an agency relationship with successor noteholders.[93] And here, despite MERS and OneWest's contentions at oral argument in this appeal, they provided no authority or support for their position that MERS had an agency relationship with successive noteholders. For these reasons, this new argument is no more persuasive than the one argued in Bain.

OneWest and MERS contend that, because Bavand knew that OneWest was purporting to be the legal beneficiary, she possesses no justifiable claim against it or MERS now. We disagree.

Nothing in the language of the Deeds of Trust Act supports the argument that the legislature intended that a borrower's knowledge of who a beneficiary is relieves compliance with the provisions of the statute. We will not read such a provision into the plain words of this statute.

To summarize, MERS and OneWest, with one exception that we shall address momentarily, are unable to show that Bavand has failed to state a claim upon which relief could be granted. Reversal and remand for further proceedings is the proper remedy.

---

[92] Bain, 175 Wn.2d at 106-07.

[93] Id.

*Validity of Trustee's Sale*

One of the rulings that the trial court made in its consolidated order of November 29, 2011 was that the June 17, 2011 trustee sale is valid. For the reasons we have just discussed in this opinion, we disagree.

The appointment of RTS as successor trustee was fatally flawed because it failed to comply with the express provisions of former RCW 61.24.010 (2009). Without a proper beneficiary making the appointment, RTS was not vested with any of the powers of the original trustee under this deed of trust.[94] There was no authority for RTS to conduct the nonjudicial foreclosure and June 17, 2011 trustee's sale. Accordingly, we reverse that part of the consolidated order validating that sale.

*Quiet Title Claim*

Bavand also argues that the trial court improperly dismissed her claim to quiet title. At oral argument in this appeal, Bavand confirmed that the primary focus of this claim is to extinguish the lien of the deed of trust given to secure her obligation to IndyMac Bank. Her counsel acknowledged during oral argument that extinguishing this lien would be subject to her satisfying her debt to the true owner of the note.

This claim to quiet title is based on the argument that "the subject deed of trust was irreparably severed from any underlying obligation. As a result any

---

[94] See RCW 61.24.010(2) ("The trustee may resign at its own election or be replaced by the beneficiary. . . . Only upon recording the appointment of a successor trustee in each county in which the deed of trust is recorded, the successor trustee shall be vested with all powers of an original trustee.").

security interest on the property arising from the deed of trust . . . is null and void.").[95] We need not address the validity of this theory for purposes of ruling on this quiet title claim.

In Walker, we recently dealt with a similar quiet title claim based on a similar premise: that the note and deed of trust were severed by the actions of the defendants.[96] As we stated in that case, an action to quiet title is an equitable proceeding that is "designed to resolve competing claims of ownership" to property.[97] It is a long-standing principle that "[t]he plaintiff in an action to quiet title must succeed on the strength of his own title and *not on the weakness of his adversary*."[98] We held in Walker that, because Walker did not allege a quiet title claim based on the strength of his own title, his quiet title claim failed.

Here, Bavand's quiet title claim does not involve either title to or ownership of the property. But the underlying principle that one must succeed on the strength of one's own claim, not on the weakness of the adversary's claim, still

---

[95] Clerk's Papers at 9.

[96] Walker, No. 65975-8-I, slip op. at 26.

[97] Id. at 27 (quoting Kobza v. Tripp, 105 Wn. App. 90, 95, 18 P.3d 621 (2001)). Under RCW 7.28.120, "[t]he plaintiff in [a quiet title action] shall set forth in his or her complaint the nature of his or her estate, claim, or title to the property, and the defendant may set up a legal or equitable defense to plaintiff's claims; and the superior title, whether legal or equitable, shall prevail."

[98] Desimone v. Spence, 51 Wn.2d 412, 415, 318 P.2d 959 (1957) (citing City of Centralia v. Miller, 31 Wn.2d 417, 197 P.2d 244 (1948); Eckley v. Bonded Adjustment Co., 30 Wn.2d 96, 190 P.2d 718 (1948); Lewis v. City of Seattle, 174 Wash. 219, 24 P.2d 427 (1933); Rohrbach v. Sanstrom, 172 Wash. 405, 20 P.2d 28 (1933); Nyman v. Erickson, 100 Wash. 149, 170 P. 546 (1918); City of Spokane v. Sec. Savs. Soc'y, 82 Wash. 91, 143 P. 435 (1914); Brown v. Bremerton, 69 Wash. 474, 125 P. 785 (1912)).

applies to this equitable proceeding. Specifically, Bavand's argument rests on the alleged deficiencies in OneWest's, MERS's and RTS's handling the note and deed of trust, not on her own claim. On this record, Bavand fails to meet the controlling test we expressed in Walker. The trial court's dismissal of Bavand's quiet title claim to extinguish the lien of the deed of trust was proper.

In ruling on this specific claim, we express no opinion in whom title to this property should vest for this litigation. That is a claim to ownership, and ownership is not presently before us. This particular claim addresses only the request to extinguish the lien of the deed of trust.

## CONSUMER PROTECTION ACT

Bavand also contends that the trial court improperly dismissed her Washington CPA claim. We agree.

Under Washington's CPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."[99] Any person injured in his or her business or property by violation of the CPA may bring a civil suit for injunctive relief, damages, attorney fees and costs, and treble damages.[100] To prevail on such a claim, the plaintiff must show "'(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property;

---

[99] RCW 19.86.020.

[100] Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (quoting RCW 19.86.090).

(5) causation.'"[101] The failure to establish any one of these elements is fatal to a plaintiff's CPA claim.[102] Whether an action gives rise to a CPA violation is a question of law that we review de novo.[103] Below, OneWest and MERS argued that the trial court should dismiss the CPA claim on two bases. First, they argued that Bavand could not argue that she is entitled to damages for enforcement of a security instrument to whose terms she assented.[104] Second, they also argued that she could not show a public interest impact by virtue of the nonjudicial foreclosure.[105] This record contains no further discussion by these moving parties of any of the CPA claim's five elements other than public interest impact.

On appeal, OneWest and MERS expand their arguments beyond what they argued below. They argue that the only possible deceptive act or practice impacting the public interest is the presence of MERS in the deed of trust.[106] They also claim that MERS's presence did not injure Bavand.[107] They are wrong on both counts because this is too limited a view of this record.

---

[101] Bain, 175 Wn.2d at 115 (quoting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986)).

[102] Nguyen v. Doak Homes, Inc., 140 Wn. App. 726, 733, 167 P.3d 1162 (2007).

[103] Panag, 166 Wn.2d at 47 (citing Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997)).

[104] Clerk's Papers at 133.

[105] Id.

[106] Opening Brief of Respondents OneWest Bank, FSB and Mortgage Electronic Registration Systems, Inc. at 32.

[107] Id. at 34.

*Unfair or Deceptive Acts or Practices*

In Bain, the supreme court considered the effect of MERS's presence in the deed of trust.[108] The court stated:

> To prove that an act or practice is deceptive, neither intent nor actual deception is required. The question is whether the conduct has "the *capacity* to deceive a substantial portion of the public." Even accurate information may be deceptive "if there is a representation, omission or practice that is likely to mislead." Misrepresentation of the material terms of a transaction or the failure to disclose material terms violates the CPA. Whether particular actions are deceptive is a question of law that we review de novo.[109]

The court went on to discuss the fact that MERS appeared as the named beneficiary in the deed of trust despite the fact that it is not a lawful beneficiary under the statutes of this state.[110] The court concluded that given its lack of legal status presence in the deed of trust had the capacity to deceive.[111] Thus, the court held, the first element of a CPA claim was presumptively met.[112]

In addition to this deceptive practice identified by the Bain court, we note that the case before us presents additional facts that may constitute an unfair or deceptive practice on the part of OneWest. As we already discussed in this opinion, OneWest falsely represented that it was the beneficiary under the deed of trust when it purportedly appointed RTS as the successor trustee. The record

---

[108] Bain, 175 Wn.2d at 115-16.

[109] Id. (citations omitted) (quoting Hangman Ridge, 105 Wn.2d at 785; Panag, 166 Wn.2d at 50).

[110] Id. at 116-17.

[111] Id. at 117.

[112] Id.

shows that it was not then the beneficiary of record; MERS was. Former RCW 61.24.010(2) (2009) expressly provides that only a beneficiary may appoint a successor trustee to conduct a foreclosure. As this record shows, there was no valid appointment of a successor trustee to conduct the foreclosure and trustee's sale of Bavand's property.

In Schroeder, the supreme court held that a failure to comply with express provisions of the Deeds of Trust Act could satisfy the unfair or deceptive practice element of a CPA claim.[113] The provision of the act at issue in that case was the requirement that only nonagricultural land may be the subject of a nonjudicial foreclosure of a deed of trust.[114] There, the trustee proceeded with a nonjudicial foreclosure with knowledge that the property was used for agricultural purposes.[115]

For similar reasons, the failure to comply here with the provisions of former RCW former 61.24.010(2) (2009), which controls the appointment of successor trustees, is also arguably an unfair or deceptive practice that serves to fulfill the first element of a CPA claim. Thus, subject to pleading and proof of this and the other CPA claim elements, liability could be established.

---

[113] Schroeder, 177 Wn.2d at 114.

[114] Id. at 105, 114.

[115] Id.

*Public Interest Impact*

A plaintiff may show that a deceptive commercial act or practice has affected the public interest by satisfying five different factors.[116]

> (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?[117]

In the context of a similar CPA claim based on MERS's representation that it was a beneficiary, the Bain court noted that "there is considerable evidence that MERS is involved with an enormous number of mortgages in the country (and our state) . . . ."[118] It then concluded that "[i]f in fact the language is unfair or deceptive, it would have a broad impact. This element is also presumptively met."[119]

Here, MERS's status as the named beneficiary in this deed of trust presumptively meets the public interest element of a CPA claim. As in Bain, the alleged acts of MERS were done in the course of its business, and MERS listing as a "beneficiary" was a generalized practice that was a course of conduct repeated in hundreds of other deeds of trust.[120] Further, as the Bain court held,

---

[116] Hangman Ridge, 105 Wn.2d at 789.

[117] Id. at 790.

[118] Bain, 175 Wn.2d at 118.

[119] Id.

[120] See id. at 94-95.

31

MERS's attempt to assign "all beneficial interest" in this deed of trust, where it had no such interest to assign, also satisfies the public interest element. And, OneWest also purported to appoint a successor trustee when it had no authority to do so, both because its assignment occurred a day before MERS attempted to "assign" its interest to OneWest and because, even if such an assignment had occurred a day prior, MERS had no interest to assign. Given these three facts, Bavand pled sufficient information for the public interest element of her CPA claim to withstand summary judgment.

MERS and OneWest argue that all of Bavand's arguments are predicated on *OneWest's* actions, not those of MERS. Thus, they argue that the conclusion in Bain regarding the public interest prong does not apply here. They are mistaken.

MERS purported to assign its beneficial interest to OneWest one day after the latter purported to appoint RTS as successor trustee. But under the Deeds of Trust Act, MERS was never a holder of the note or deed of trust, meaning it had no beneficial interest in the note to assign.[121] Thus, MERS's role in Bavand's deed of trust is central to the alleged CPA violation.

*Injury and Causation*

To make out a CPA claim, a plaintiff must also show that he or she was injured in his or her "business or property."[122] As the supreme court concluded in Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co., "[t]he injury

---

[121] RCW 61.24.005(2).

[122] Hangman Ridge, 105 Wn.2d at 792.

32

involved need not be great, but it must be established."[123] But, as the supreme court noted in <u>Panag v. Farmers Insurance Co. of Washington</u>, "'Injury' is distinct from 'damages.' Monetary damages need not be proved; unquantifiable damages may suffice."[124]

In <u>Panag</u>, the plaintiff was involved in a car accident and sued the other drivers' insurance company and its collection agency for violation of the CPA.[125] The defendants argued that Panag could not establish injury "because she did not remand payment in response to the collection notices."[126] The supreme court rejected this argument.[127] It held that "[t]o establish injury and causation in a CPA claim, it is not necessary to prove one was actually deceived. It is sufficient to establish the deceptive act or practice proximately caused injury to the plaintiff's 'business or property.'"[128]

Here, Bavand's property was sold as a result of MERS's, OneWest's and RTS's actions. Thus, Bavand can show an injury to her property sufficient to withstand summary judgment as to her CPA claim.

---

[123] <u>Id.</u>

[124] <u>Panag</u>, 166 Wn.2d at 58 (citations omitted).

[125] <u>Id.</u> at 34-36.

[126] <u>Id.</u> at 58.

[127] <u>Id.</u> at 63-64.

[128] <u>Id.</u> (quoting <u>Reiter v. Sonotone Corp.</u>, 442 U.S. 330, 340, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979)).

OneWest and MERS argue that Bavand was required to mitigate her damages prior to bringing a CPA claim, and, because she did not, she cannot now demonstrate injury. But OneWest and MERs do not explain how Bavand failed to mitigate any of her damages. Nor do they explain how mitigation of damages alters the initial injury to Bavand as a result of their actions. As Panag noted, damages are distinct from whether an injury existed.[129] Thus, their argument fails.

OneWest and MERS also contend that Bavand cannot demonstrate that any of her alleged injuries were proximately caused by their commercial practices. But, if reasonable minds could differ as is the case here, proximate cause is a factual issue to be decided by the jury.[130] Further, as we have explained, MERS's failure to comply with the Deeds of Trust Act and the consequent invalidity of the trustee's sale caused Bavand to lose her property and incur expenses. This evidence of injury and causation is sufficient to withstand a motion for summary judgment. MERS and OneWest's arguments to the contrary are not persuasive.

In sum, Bavand has pled sufficient facts that, if proved, could satisfy all elements of a CPA claim. Dismissal of this cause of action against MERS and OneWest was not warranted.[131]

---

[129] Id. at 58.

[130] Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

[131] Walker, No. 65975-8-I, slip op. at 26.

34

In her briefing on appeal, Bavand also asserts that RTS violated the CPA.[132] RTS does not respond to this claim in its briefing. Because of this lack of briefing by RTS, we do not decide this question. Rather, we remand this claim for further consideration by the trial court.

## OTHER CLAIMS

The trial court's consolidated order makes a number of other rulings on issues we need not decide. To assist the court and the parties on remand, we identify what we do not decide and why.

Bavand argues that the trial court erred when it refused to compel the enforcement of an alleged CR 2A settlement agreement it claims to have made with RTS to suspend the June 17, 2011 trustee's sale. Bavand also argues that a valid TRO enjoined this same sale. Both of these issues are moot because this court cannot give any relief for either claim.

Generally, this court will not consider a moot issue unless it involves "'matters of continuing and substantial public interest.'"[133] "'A case is technically moot if the court cannot provide the basic relief originally sought . . . or can no

---

[132] Appellants' Opening Brief at 25, 28, 31.

[133] In re Cross, 99 Wn.2d 373, 377, 662 P.2d 828 (1983) (quoting Sorenson v. City of Bellingham, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)).

longer provide effective relief.'"[134] Mootness is a question of law that this court reviews de novo.[135]

Here, the trustee's sale has already occurred. Further, as RTS confirmed at oral argument, it issued a trustee's deed to the successful bidder at that sale. While we have concluded that the trustee's sale did not lawfully comply with the Deeds of Trust Act, any argument as to the TRO obtained by Bavand to halt the sale is now moot as this court can no longer provide that relief. Thus, we need not address Bavand's claims that the trial court erred when it refused to compel what she characterizes as a settlement agreement between her counsel and RTS regarding the trustee's sale. Nor need we address whether the TRO Bavand obtained was valid and should have prevented the trustee's sale in the first place. These matters are also moot.

MERS and OneWest argue that assignments of deeds of trust are recorded for notice purposes only. They also contend that the note and deed of trust were not severed and thus MERS had the right to transfer its interest to OneWest. We need not address these arguments because they are not relevant to our primary decision in this appeal.

---

[134] Dioxin/ Organochlorine Ctr. v. Pollution Control Hearings Bd., 131 Wn.2d 345, 350-51, 932 P.2d 158 (1997) (citations omitted) (quoting Snohomish County v. State, 69 Wn. App. 655, 660, 850 P.2d 546 (1993)).

[135] Hilltop Terrace Homeowner's Ass'n v. Island County, 126 Wn.2d 22, 29, 891 P.2d 29 (1995).

## ATTORNEY FEES

Bavand and OneWest each seek an award of attorney fees based on the provision for fees in the deed of trust. RTS does not seek an award of fees. We note that Bavand may also seek an award of attorney fees against each defendant against whom her CPA claim is successful. But an award of fees to any party on any basis is premature, and we consequently deny all requests.

There is, as yet, no prevailing party for any of the claims in this action. Accordingly, it is premature to award fees to any party. The decision on this question should abide the trial court's judgment after remand and further proceedings.

We affirm the dismissal of the quiet title claim. We reverse the remainder of the trial court's order granting OneWest and MERS's CR 12(b)(6) motion to dismiss. We also reverse the order validating the trustee's sale. We remand for further proceedings.

Cox, J.

WE CONCUR:

Leach, C.J.

Dwyer, J.