# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Guardianship of )
)     No. 73538-1-I
WILLIAM CHARLES SUTTON, )
)     DIVISION ONE
An Alleged Incapacitated Person. )
)     UNPUBLISHED OPINION
)
)
)     FILED: May 9, 2016
_____ )

TRICKEY, A.C.J. — Two sisters appeal the superior court's dismissal of their petition to appoint a guardian for their brother. While this appeal was pending, the brother passed away. Because we hold that the issues raised by this appeal are moot, we dismiss the appeal.

## FACTS

In May 2009, William Charles Sutton appointed his son, Benjamin Sutton, as his attorney-in-fact through a durable power of attorney.[1] At the same time, Charlie executed a health care power of attorney, which designated Ben as his agent for health care decisions in the event that Charlie became incapacitated.

Charlie lived alone in Sultan, Washington until 2010. With the help of his sisters and son, Charlie sold his house in Sultan and bought a house in Ferndale, closer to his son. Charlie was diagnosed with Alzheimer's in June 2012. In February 2014, Ben convinced his father to move into Emeritus, an assisted living

_____
[1] For the sake of clarity, we have adopted the parties' convention of referring to the father as Charlie and the son as Ben. We intend no disrespect.

facility in February 2014.

In March 2014, Ben moved Charlie to The Bellingham at Orchard, a facility for patients with advanced dementia.

In October 2014, Charlie's sisters, Cynthia (Brown) Murders and Claudia Harris, suggested to Ben that they move Charlie to a house next to Harris's in rural Washington. Ben did not approve the move.

Harris and Murders contacted Adult Protective Services about Ben's alleged financial and medical exploitation of Charlie in November 2014. The investigation did not reveal any wrongdoing.

Harris and Murders filed a petition to have a guardian appointed for Charlie's person and estate in December 2014. They alleged that Ben had placed Charlie at The Bellingham against his will and was restraining him by use of medication.

The sisters based most of their claims about the involuntary nature of Charlie's treatment and living situation on Charlie's reluctance to use medication earlier in life and Charlie's comments years earlier that he would prefer dying at home to living in a nursing home. Murders' declaration alleged that Charlie had "begged [her] to help him get out of" the nursing home.[2] She also alleged that Ben had denied her access to Charlie as retaliation against her contacting Adult Protective Services and as a way to prevent her from seeing "the damage being done to Charlie by the administration of drugs."[3]

The court appointed a guardian ad litem (GAL) to assess Charlie. The GAL

---

[2] Clerk's Papers (CP) at 29.
[3] CP at 28.

met with Charlie and received oral or written reports from Charlie's doctors and nurses, the executive director of the Bellingham, and the Adult Protective Services investigator. The GAL recommended that the court not appoint a guardian for Charlie at that time, because the power of attorney was functioning well and Ben was meeting Charlie's needs.

After receiving the GAL report, Ben moved to dismiss the guardianship petition. Before the court ruled on that motion, the sisters filed a second petition for guardianship, pro se, in February 2015. They attached declarations from Charlie's relatives and friends. They also attached Internet printouts from the Food and Drug Administration and the Mayo Clinic about the dangers of using anti-psychotic medications to treat Alzheimer's.

At a hearing in February 2015, the court expressed its reluctance "to interfere with a person's selection of someone to be their power of attorney" and noted that "normally the Court would not intervene . . . in the absence of some pretty clear evidence that the person empowered under the power of attorney . . . is abusing that power."[4] It found that there was not a "sufficient basis to establish a guardianship" but deferred ruling on the motion to dismiss the guardianship petition until Charlie underwent a neuropsychological examination.[5] The court stated that, "assuming that the neuropsychological evaluation indicates that Mr. Sutton's care is appropriate and his medical regimen is appropriate to his condition," the court would dismiss the petition.[6] The court also ordered that the

---

[4] Report of Proceedings (RP) (Feb. 27, 2015) at 17-18.
[5] RP (Feb. 27, 2015) at 33-34.
[6] RP (Feb. 27, 2015) at 34-35.

3

sisters should be allowed to visit Charlie.

After reviewing the neuropsychological report, the GAL again recommended that the court not appoint a guardian. After that evaluation, Murders and Harris filed a motion for an order to show cause why the superior court should not find Ben and the executive director of The Bellingham in contempt for perjury and failing to comply with the court's order. They also filed a motion for reconsideration, alleging that the neuropsychologist was neither neutral nor independent. They sought discovery to investigate Ben's decisions regarding Charlie's finances.

The superior court dismissed the guardianship petition after a hearing in May 2015. The court ordered Murders and Harris to pay the attorney fees Charlie's estate incurred responding to their motions for reconsideration and contempt. The court reasoned that those two motions "were not well-founded," particularly in light of its earlier rulings.[7]

Murders and Harris appeal. Charlie passed away while the appeal was pending.

## ANALYSIS

### Mootness

"'A case is moot if a court can no longer provide effective relief.'" State v. Ross, 152 Wn.2d 220, 228, 95 P.3d 1225 (2004) (quoting State v. Gentry, 125 Wn.3d 570, 616, 888 P.2d 1105 (1995)). We review de novo whether an appeal is moot. Bavand v. OneWest Bank, FSB, 176 Wn. App. 475, 510, 309 P.3d 636

---

[7] RP (May 8, 2015) at 11.

(2013).

The parties informed the court that Charlie has died. Nonetheless, Harris and Murders urge this court to grant relief by ordering disclosure of medical and financial records.[8] Ben agrees that the guardianship petition filed by Harris and Murders is now moot but asserts the request for attorney fees remains in controversy.

The relief sought in the superior court was a guardianship over Charlie. Because Charlie is deceased, that relief is no longer available. Except for the attorney fees, we dismiss the appeal as moot, because we can no longer provide effective relief.[9]

## Attorney Fees

Ben seeks an award of attorney fees under RCW 11.96A.150. In determining whether to award fees under this statute, "the court may consider any and all factors that it deems to be relevant and appropriate." RCW 11.96A.150(1). Considering the resolution of this appeal, we exercise our discretion and do not award attorney fees to Charlie's estate.

Harris and Murders also assign error to the superior court's award of attorney fees against them. We do not reach their attorney fee challenge, in part because they waived this assignment of error by failing to argue it in their brief on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

---

[8] Murders and Harris initially asked this court to stay cremation until an emergency motion to compel an autopsy can be heard. They have since informed the court that Charlie has been cremated.
[9] We reject Ben's request to reach the merits of the appeal.

We dismiss the appeal as moot.

Trickey, ACJ

WE CONCUR:

Schindler, J.

Becker, J.